Charles Voyed **HARRELSON**, Movant,

v.

**UNITED STATES of America,**
**Respondent.**

**Civil No. SA–97–CA–518[SA–82–CR–57(2)].**

United States District Court,
W.D. Texas,
San Antonio Division.

June 13, 1997.

Bill May, Law Offices of Bill May, Corpus Christi, TX, David M. Michael, San Francisco, CA, Alan M. Dershowitz, Cambridge, MA, for Plaintiff.

William Blagg, U.S. Attorney, San Antonio, TX for U.S.

BIERY, District Judge.

### *ORDER*

Before the Court are apparent issues of first impression:

1) Whether Rules 11 and 24 of the Federal Rules of Civil Procedure apply to a proceeding filed by a convicted federal criminal defendant pursuant to Title 28 U.S.C. Section 2255;

2) Whether a convicted federal criminal defendant's former counsel may intervene as a matter of right in a Section 2255 proceeding filed by said counsel's former client when the former client has accused his former counsel of ineffective assistance.

For the reasons set forth below, this Court orders both questions answered in the negative.

*The Setting*

Movant Charles Voyed Harrelson was convicted of conspiracy to murder United States District Judge John H. Wood, Jr., in 1983. The Fifth Circuit affirmed the conviction in February, 1985, and the Supreme Court denied certiorari in December, 1985.[1]

---

1. *See United States v. Harrelson,* 754 F.2d 1153 (5th Cir.1985), *rehearing denied,* 766 F.2d 186     (5th Cir.1985), *cert. denied,* 474 U.S. 1034, 106 S.Ct. 599, 88 L.Ed.2d 578 (1985).

On April 23, 1997, movant filed a motion to vacate his sentence in cause no. SA–82–CR–57(2) for his participation in the conspiracy to murder Judge Wood. As grounds for relief, movant argues, among other things, that (1) the Government failed to disclose to his defense counsel certain exculpatory information relating to both the identities of other suspects in the murder who were investigated by the law enforcement agencies and the testimony of the Government's firearms expert at trial, (2) movant's trial counsel, Thomas G. Sharpe, Jr., Esquire, rendered ineffective assistance by failing to (a) withdraw or to advise or disclose to movant that said counsel was operating under a variety of conflicts of interest, (b) investigate adequately the case against movant, including failing to investigate adequately potential alibi evidence, evidence relating to the firearms testimony given by the FBI expert at trial, and evidence relating to the identities of other suspects who were investigated by authorities, (c) object to the admission at trial of, or to request limiting jury instructions concerning, evidence that movant had previously been convicted of murder and had engaged in a sexual relationship with his stepdaughter, (d) object to the admission of hypnotically-induced testimony from four Government witnesses, (e) obtain adequate resources to investigate the case properly, and (f) obtain adequate time, via a continuance, to investigate the case properly against movant and to review adequately all of the Government's evidence, and (3) movant's appellate counsel, also Mr. Sharpe, rendered ineffective assistance by failing to (a) disclose to movant that said counsel was working under a variety of conflicts of interest, (b) raise several potentially meritorious issues on direct appeal, including complaints regarding the admission of various pieces of trial testimony, and (c) adequately present movant's contention that movant's conversations with attorney Joe Chagra were protected by the attorney-client privilege.

In several documents signed by Alan M. Dershowitz, Esquire, and David Michael, Esquire, accompanying movant's brief in support of his motion to vacate his sentence, movant alleges that (1) during his pretrial preparation for movant's trial, Mr. Sharpe consulted extensively with fellow attorney Alan Brown, who assisted in movant's representation in the pretrial phase of the Wood murder trial, (2) Mr. Brown was then or had been a target or subject in the murder investigation of Judge Wood, (3) several of Mr. Brown's clients had also been suspects at one time or another in the Wood murder investigation, (4) Mr. Sharpe was not aware until April, 1997, that Mr. Brown had ever been considered a suspect in the Wood murder investigation, (5) the Department of Justice removed former U.S. Attorney Jamie Boyd because he believed that persons other than movant were responsible for Judge Wood's murder, and (6) the FBI obtained a detailed statement from one Rolando Riojas implicating persons other than movant and his co-defendants in the Wood murder.

In addition to the foregoing documents, movant also attached to the brief accompanying his motion to vacate a sworn declaration in which movant averred that (1) Mr. Alan Brown was involved in the preparation of movant's defense, (2) neither Mr. Sharpe nor Mr. Brown ever informed movant that Mr. Brown had been a suspect in the Wood murder investigation or that the FBI had obtained a detailed statement from Rolando Riojas implicating Mr. Brown in the Wood murder conspiracy, (3) neither Mr. Brown nor Mr. Sharpe ever advised movant that they were operating under any conflict of interest or that their loyalties were divided in any manner in connection with their defense of movant, (4) following trial, movant asked Mr. Sharpe to "remove himself" from the case but Sharpe refused to do so and refused to furnish movant with a copy of the trial transcript, and (5) Mr. Sharpe failed to consult with movant regarding the preparation of movant's appellate brief.

*The Motions*

The matters before the Court are (1) the motion to intervene for purposes of Rule 11 sanctions and (2) the motion for hearing and for sanctions, both filed May 12, 1997, by movant's former trial and appellate counsel,

Thomas G. Sharpe, Jr., Esquire.[2] These motions raise issues as to Mr. Sharpe's standing, as well as whether, and to what extent, the Federal Rules of Civil Procedure apply in this Section 2255 proceeding.

### 1. *Intervention, Standing, and Rules of Civil Procedure*

■ Mr. Sharpe alleges in his motion to intervene that because he has been accused of rendering ineffective assistance to movant both at trial and on appeal, he has "an interest" in movant's motion to vacate sentence in that the allegations made against him by movant have a direct impact upon Mr. Sharpe's Board Certification in Criminal Law by the Texas Board of Legal Specialization and that, absent his intervention in this Section 2255 proceeding, his interest is not adequately protected by the parties. There is no explanation, however, what impact the filing of a Section 2255 motion might possibly have on a Board Certification in Criminal Law. Likewise, there is no reference or citation to any Texas statute or administrative rule or regulation which provides that the mere filing of an accusation of ineffective assistance against a board-certified criminal lawyer in a Section 2255 motion either provides a basis for loss of such certification or necessitates a formal inquiry by appropriate board-certification authorities into that alle-

gation.[3] Mr. Sharpe does not allege that the Government has acquiesced in movant's assertions of ineffective assistance on his part or that there has been any collusion between movant and the Government in connection with those same allegations. In view of the Government's obvious interest in preserving the finality of movant's conviction and sentence, as well as its very substantial interest in avoiding a retrial of its case against movant, Mr. Sharpe's claim that his interest in this Section 2255 will not be adequately represented by the parties is unpersuasive. As movant's former counsel, Mr. Sharpe is neither a party to this post-sentence criminal proceeding nor attorney of record for movant. Mr. Sharpe lacks standing in this Section 2255 proceeding.[4]

■ Mr. Sharpe relies upon Rule 24 of the Federal Rules of Civil Procedure in support of his motion to intervene. However, a motion to vacate sentence filed pursuant to Title 28 U.S.C. Section 2255 is a post-sentence motion filed in a federal criminal proceeding. While the Court Administration Division of the Administrative Office of the United States Courts has directed the Clerks of the United States District Courts to assign civil cause numbers to motions filed pursuant to Title 28 U.S.C. Section 2255,[5] that procedure is purely for administrative and statistical

---

**2.** Mr. Sharpe's Curriculum Vitae is, in part, as follows:

> Education: University of Texas (B.A., 1960; J.D., 1963). Recipient, General Practitioner of the Year Award, State Bar of Texas, 1972. Listed in "Best Lawyers in America." Examiner, Texas Board of Legal Specialization, Criminal Law, 1979–81. Chairman, Criminal Law Advisory Commission, Texas Board of Specialization, 1980–82. Member, 1982–87 and Chairman, 1987, Texas Board of Legal Specialization. Texas Criminal Defense Lawyers Association (Charter Member; Director, 1971–1977; First Vice President, 1980–1981; President–Elect, 1982; President 1983–1984). Texas Association of Certified Criminal Law Specialists (Vice–President, 1979–1981; President, 1981–1982). Board Certified, Criminal, Civil Trial and Personal Injury Trial Law, Texas board of Legal Specialization. 15 Martindale-Hubbell Law Directory TX1288B (1995).

**3.** As explained below, claims of ineffective assistance by a Section 2255 movant's former trial or

appellate counsel are the rule, rather than the exception, in Section 2255 proceedings.

**4.** *See Linda R.S. v. Richard D.*, 410 U.S. 614, 618, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973), (recognizing that a private citizen generally lacks standing to participate as a party in the criminal prosecution of another).

**5.** *See* Clerk's Manual, United States District Courts, Volume I, Chapter 10, § 10.02(c)(2)(i):

> (1) Section 2255 motions to vacate sentence have replaced habeas corpus actions for federal inmates who want judicial review of the conviction that sent them to prison. Such a motion is filed in the court of conviction. *Although a new civil case is opened, it is only a shell. See Volume XI (Statistics Manual), Chapter V, Part III.C., of the Guide,.* The matter should be assigned to the original trial judge (who may refer it to a magistrate judge), and the petition is treated as a motion in the closed criminal case. All subsequent pleadings should be filed in the criminal case. The civil

purposes and does not alter the fundamental nature of a Section 2255 proceeding as a collateral attack upon an otherwise final criminal conviction and sentence.[6] No rule of federal criminal procedure allows intervention by third parties in criminal proceedings.[7] There is no analogue to Rule 24 of the Federal Rules of Civil Procedure contained in the Federal Rules of Criminal Procedure which permits a convicted federal criminal defendant's former trial or appellate counsel to intervene in a Section 2255 proceeding—either to protect Mr. Sharpe's and other attorneys' good names and reputations or any other equally legitimate purposes.

The rules of procedure governing Section 2255 proceedings are found in the aptly-titled "Rules Governing Section 2255 Proceedings for the United States District Court." Nothing in those rules of procedure expressly or specifically authorizes a former trial counsel or any other third party to "intervene" in a Section 2255 proceeding. Admittedly, Rule 12 of those rules provides that, if no procedure is specifically prescribed therein, the district court may proceed in any manner not inconsistent with those rules to apply any provisions of the Federal Rules of Civil Procedure or Federal Rules of Criminal Procedure, whichever it deems most appropriate,

in a Section 2225 proceeding. Despite diligent research, however, this Court has been unable to locate a single instance in which any federal court has ever applied Rule 24 of the Federal Rules of Civil Procedure to permit intervention by a third party in a Section 2255 proceeding.[8] The lone case cited by Mr. Sharpe in support of his request to intervene was a civil employment discrimination lawsuit brought pursuant to Title VII of the Civil Rights Act of 1964.[9] Third-party intervention in federal criminal forfeiture proceedings is restricted by applicable statute.[10] Intervention pursuant to Rule 24 of the Federal Rules of Civil Procedure is generally not permitted in federal criminal proceedings [11] or even in quasi-criminal contempt proceedings.[12]

Admittedly, some federal Circuit Courts which have allowed third parties to "intervene" in criminal proceedings. However, the third parties permitted to "intervene" by those appellate courts have been limited generally to either (1) media representatives seeking to "intervene" in a federal criminal case for the limited purpose of challenging or appealing a federal district court order closing district court proceedings or sealing court documents or other materials [13] or (2)

case should be closed once the motion has been ruled upon. [Emphasis added].

**6.** For reasons which are far from apparent, the special reporting procedures required by the Administrative Office of the United States Courts that apply to post-sentence motions to *vacate* sentence filed pursuant to Section 2255 motions do not apply to post-sentence motions to *modify* sentence filed pursuant to Title 18 U.S.C. Section 3582(c)(2). *See* Clerk's Manual, United States District Courts, Volume XI, Chapter V, Section III.C. In view of the ethereal differences between the real-world impacts of Section 2255 and Section 3582(c)(2) motions and the substantial amount of scarce judicial resources necessary to resolve both kinds of post-sentence motions, this dichotomy in the statistical treatment of these two types of motions is anomalous at best.

**7.** *In re New York Times Company*, 878 F.2d 67, 67 (2d Cir.1989).

**8.** On the contrary, there is authority for the opposite contention. *See, e.g., In re Application of the New York Times*, 708 F.Supp. 603, 604 (S.D.N.Y.1989), (holding that Rule 24, Fed.R.Civ. P., has no applicability to criminal cases).

**9.** *See United States v. State of New York*, 820 F.2d 554 (2d Cir.1987).

**10.** *See United States v. Reckmeyer*, 836 F.2d 200, 203 n. 1 (4th Cir.1987), *citing* 21 U.S.C. § 853(k). Under subsection 853(n) of Title 21, U.S.C., a third-party possessing an interest in property subject to Government forfeiture must await the completion of the forfeiture process before asserting that interest.

**11.** *See United States v. Briggs*, 514 F.2d 794, 804 (5th Cir.1975), (holding that an unindicted co-conspirator had no right to intervene under the Federal Rules of Criminal Procedure).

**12.** *See United States v. Fitch*, 472 F.2d 548, 549–50 (9th Cir.1973), *cert. denied sub nom. Meisel v. United States*, 412 U.S. 954, 93 S.Ct. 3003, 37 L.Ed.2d 1007 (1973), (holding that an indicted criminal defendant had no right to intervene in a separate, civil contempt proceeding brought against two individuals who, despite being granted use immunity, refused to testify before a grand jury investigating the indicted person).

**13.** *See, e.g., United States v. Valenti*, 987 F.2d 708, 711 (11th Cir.1993), *cert. denied, sub nom. Times Publishing Co. v. U.S. District Court*, 510 U.S. 907, 114 S.Ct. 289, 126 L.Ed.2d 238 (1993),

corporations or other business entities seeking leave to intervene to protect privileged or confidential information or documents obtained, or property seized, during a criminal investigation.[14] Mr. Sharpe's motion for leave to intervene in this Section 2255 proceeding falls within neither of those two narrow exceptions to the general rule against third-party intervention in federal criminal proceedings. Further, unlike the Circuits which have permitted the two types of third-party intervention described above, the Fifth Circuit has long recognized that a non-party may challenge via appeal a wide variety of orders in a federal criminal case without actually intervening in that proceeding.[15]

This Court recognizes that movant's accusations of ineffective assistance justify legitimate concern by Mr. Sharpe over possible damage to his professional reputation. However, there is nothing unusual or extraordinary about a Section 2255 movant alleging former trial or appellate counsel rendered ineffective assistance. In fact, in recent years the Fifth Circuit has greatly circumscribed the scope of Section 2255 review absent pleading and proof of ineffective assistance by the movant's trial or appellate counsel.[16]

Generally speaking, Section 2255 provides relief for a federal prisoner who can establish that either (1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack.[17] The

(holding that a newspaper had standing to intervene in a federal criminal case to challenge the closure of certain pretrial proceedings even though it was not a party); *Petition of Tribune Company*, 784 F.2d 1518, 1521 (11th Cir.1986), (holding that the press had standing to intervene in a criminal case post-trial to obtain copies of transcripts of bench conferences from trial); *Application of The Herald Company*, 734 F.2d 93, 96 (2d Cir.1984), (asserting jurisdiction over a newspaper's appeal from a district court Order closing the courtroom in a criminal case); and *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 425–26 (5th Cir.1981), (accepting jurisdiction over a broadcasting company's appeal from a district court Order barring release to the media of audiotapes that had been admitted into evidence at trial).

Moreover, some Circuit Courts have avoided addressing the sticky issue of intervention in federal criminal cases by construing "appeals" filed by media representatives seeking review of district court orders in criminal cases as original actions for mandamus or other extraordinary relief. *See, e.g., In re Globe Newspaper Company*, 920 F.2d 88, 91 (1st Cir.1990), (declining to determine whether there is a right to intervene possessed by a newspaper seeking to examine the names and addresses of jurors who had participated in a just-completed criminal trial but reviewing that same issue in the context of a mandamus action).

14. *See, e.g., United States v. Cuthbertson*, 651 F.2d 189, 193 (3d Cir.1981), *cert. denied*, 454 U.S. 1056, 102 S.Ct. 604, 70 L.Ed.2d 594 (1981), (holding the persons affected by the disclosure of allegedly privileged materials may intervene in pending criminal proceedings and seek protective orders); *United States v. Hubbard*, 650 F.2d 293, 303 (D.C.Cir.1980), (holding that a party

from whom materials are seized in the course of a criminal investigation retains a property interest in the seized materials); *United States v. Feeney*, 641 F.2d 821, 824 (10th Cir.1981), (holding that a party affected by disclosure of allegedly privileged materials could intervene in a criminal action to seek a protective order); and *United States v. RMI Company*, 599 F.2d 1183, 1186 (3d Cir.1979), (holding the same). However, at least one of these same courts recognized that the issue of whether intervention *eo nomine* is permissible in a federal criminal case is an open question. *See United States v. Hubbard*, 650 F.2d at 311–12 n. 67.

15. *See* cases cited and discussed in *United States v. Chagra*, 701 F.2d 354, 358–60 (5th Cir.1983), (appeal by media representatives seeking access to the criminal trial of movant's alleged co-conspirator Joseph Chagra).

16. *See United States v. Guerra*, 94 F.3d 989, 994 (5th Cir.1996); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir.1996); *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir.1996); *United States v. Acklen*, 47 F.3d 739, 742 (5th Cir.1995); and *United States v. Patten*, 40 F.3d 774, 776 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2558, 132 L.Ed.2d 811 (1995). In each of these cases, the Fifth Circuit recognized that allegations and proof of ineffective assistance by a Section 2255 movant's trial or appellate counsel are sufficient to permit the movant to present new or otherwise procedurally barred claims for relief for the first time in a section 2255 motion.

17. *See United States v. Placente*, 81 F.3d at 558; *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir.1995); *United States v. Faubion*, 19 F.3d 226, 232 (5th Cir.1994); *United States v. Cates*, 952 F.2d 149, 151 (5th Cir.1992), *cert. denied*, 504

Fifth Circuit has repeatedly held that Section 2255 relief is reserved for errors of constitutional dimension and other injuries that could not have been raised on direct appeal and, if left unaddressed, would result in a complete miscarriage of justice.[18] The Fifth Circuit has held Section 2255 does not permit review of trial court errors that are not of a constitutional or jurisdictional magnitude and that could have been reached by a direct appeal.[19] Moreover, the Fifth Circuit has held a convicted criminal defendant may not raise an issue, regardless of whether constitutional or jurisdictional in nature, for the first time in a Section 2255 motion without showing both "cause" and "actual prejudice" resulting from the error.[20] One of the few claims that the Fifth Circuit recognizes as satisfying the "cause" and "actual prejudice" standard is proof of ineffective assistance by the Section 2255 movant's trial or appellate counsel.[21]

For these reasons, Section 2255 motions filed in this Circuit routinely allege ineffective assistance by the movant's former trial or appellate counsel. In so doing, however,

the Section 2255 motion does not thereby make the former trial or appellate counsel a party to that Section 2255 proceeding or otherwise justify intervention by the former trial or appellate attorney in that proceeding.[22]

The inability to intervene does not, however, leave attorneys such as Mr. Sharpe wholly devoid of recourse in the face of accusations of ineffective assistance by their former clients. In most situations, a former trial or appellate counsel who is accused of ineffective assistance has at least two avenues of response available. First, the former defense attorney may execute and furnish to the Government for submission to the Court a detailed affidavit outlining the scope of said counsel's pretrial investigation, the information the attorney developed prior to trial, and the rationale behind said counsel's tactical decisions, such as whether to present certain evidence or witnesses and whether to pursue certain defensive strategies as opposed to

U.S. 962, 112 S.Ct. 2319, 119 L.Ed.2d 238 (1992); and 28 U.S.C. § 2255.

**18.** *See United States v. Payne,* 99 F.3d 1273, 1281 (5th Cir.1996); *United States v. Gaudet,* 81 F.3d at 589; *United States v. Ressler,* 54 F.3d 257, 259 (5th Cir.1995); *United States v. Acklen,* 47 F.3d at 741; *United States v. Mimms,* 43 F.3d 217, 219 (5th Cir.1995); *United States v. Patten,* 40 F.3d at 776; *United States v. Segler,* 37 F.3d 1131, 1133 (5th Cir.1994); *United States v. Smith,* 32 F.3d 194, 196 (5th Cir.1994); *United States v. Towe,* 26 F.3d 614, 616 (5th Cir.1994); *United States v. Faubion,* 19 F.3d at 233; *United States v. Pierce,* 959 F.2d 1297, 1301 (5th Cir.1992), *cert. denied,* 506 U.S. 1007, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992); *United States v. Vaughn,* 955 F.2d 367, 368 (5th Cir.1992); *United States v. Weintraub,* 871 F.2d 1257, 1266 (5th Cir.1989); *United States v. Smith,* 844 F.2d 203, 205–06 (5th Cir. 1988); and *United States v. Capua,* 656 F.2d 1033, 1037 (5th Cir.1981).

**19.** *See United States v. Payne,* 99 F.3d at 1281; *United States v. Seyfert,* 67 F.3d at 546; *United States v. Smith,* 32 F.3d at 196; *United States v. Towe,* 26 F.3d at 616; *United States v. Faubion,* 19 F.3d at 232; *United States v. Pierce,* 959 F.2d at 1301; *United States v. Vaughn,* 955 F.2d at 368; and *United States v. Stumpf,* 900 F.2d 842, 845 (5th Cir.1990). "If the error is not of constitutional or jurisdictional magnitude, the defendant must show the error would result in a complete miscarriage of justice." *United States*

*v. Segler,* 37 F.3d at 1133, *quoting United States v. Shaid,* 937 F.2d at 232 n. 7.

**20.** *United States v. Gaudet,* 81 F.3d at 589; *United States v. Acklen,* 47 F.3d at 741–42; *United States v. Mimms,* 43 F.3d at 219; *United States v. Patten,* 40 F.3d at 776: "A movant is barred from raising jurisdictional and constitutional claims for the first time on collateral review unless he demonstrates cause for failing to raise the issue on direct appeal and actual prejudice resulting from the error."; and *United States v. Segler,* 37 F.3d at 1133, *quoting United States v. Shaid,* 937 F.2d 228, 232 (5th Cir.1991), *cert. denied,* 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992).

**21.** *See United States v. Guerra,* 94 F.3d at 994; *United States v. Placente,* 81 F.3d at 558; *United States v. Gaudet,* 81 F.3d at 589; *United States v. Acklen,* 47 F.3d at 742; and *United States v. Patten,* 40 F.3d at 776.

**22.** Mr. Sharpe also argues that he is an "indispensable witness" in this Section 2255 proceeding. However, nothing in the Federal Rules of Criminal Procedure, any federal statute, or any applicable case law authorizes material witnesses to intervene as parties in federal criminal proceedings, either prior to trial, during trial, or post-sentencing. As explained above, claims such as those presented by movant herein that the movant's former counsel failed to adequately investigate the case against the movant prior to trial, failed to develop and introduce exculpatory evidence, and failed to present available defenses

others.[23] Such information can be recited by the attorney accused of ineffective assistance without violating the attorney-client privilege simply by omitting from the affidavit any mention of privileged communications. Second, in those Section 2255 proceedings in which the movant alleges his former counsel rendered ineffective assistance by virtue of certain specific acts or omissions, the movant has effectively waived the attorney client privilege with regard to all communications relevant to those specific allegations of ineffective assistance.[24] Thus, insofar as movant premises his claims of ineffective assistance on either his communications regarding certain subjects with his former attorney or on allegations that his former attorney failed to communicate relevant information on those subjects to movant, Mr. Sharpe is free to disclose the full extent of his communications with movant regarding those same subjects.[25] Thus, insofar as movant herein relies upon his communications or non-communications with his former attorney, the movant's former trial or appellate counsel can be called by either side to testify as a witness regarding those communications at an evidentiary hearing in this cause or, alternatively, may execute affidavits detailing said counsel's otherwise confidential communications with his former client.[26] By accusing Mr. Sharpe of multiple instances of ineffective assistance of counsel, both at trial and on appeal, movant has waived the attorney-client privilege with regard to a wide range of otherwise privileged communications.[27] In addition to previously privileged communications, Mr. Sharpe is also free to testify fully regarding matters not covered by the attorney-client privilege, including the nature and extent of his attorney's work product and tactical decision-making in the course of representing movant at trial and on appeal. Thus, information which Mr. Sharpe learned through his own investigations during the many years that he represented the movant in this and other criminal proceedings that was not made known to him solely through privileged communications can be revealed by Mr. Sharpe in the course of defending himself against movant's accusations of ineffective assistance. In sum, there are many avenues available to Mr. Sharpe if he wishes to present "the other side of the story" which do not require or involve his intervention as a party in this Section 2255 proceeding.

For the foregoing reasons, Mr. Sharpe's motion for leave to intervene will be denied.

---

are the norm, rather than the exception, in Section 2255 proceedings.

23. In fact, the United States Attorney for the Western District of Texas typically includes affidavits from a Section 2255 movant's former trial or appellate counsel as part of its response to Section 2255 motions filed in this Court whenever an issue of ineffective assistance by said counsel has been raised by the movant.

24. See United States v. Ballard, 779 F.2d 287, 292 (5th Cir.1986), cert. denied, 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986), (holding that an attorney may reveal otherwise privileged communications from his client to defend himself against charges of improper conduct without violating either the ethical rules of confidentiality or the attorney-client privilege); and Laughner v. United States, 373 F.2d 326, 327 (5th Cir.1967), (holding that a Section 2255 movant waived the attorney-client privilege by alleging that his former counsel had failed to adequately represent him at his arraignment and sentencing: "where, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to that issue.").

25. See Industrial Clearinghouse v. Browning Manufacturing, 953 F.2d 1004, 1007 (5th Cir. 1992), (holding that although the mere institution of a legal action by a client against his former counsel does not per se waive the attorney-client privilege, the revelation by the former client of the contents of confidential communications between the former attorney and client does waive the privilege); and United States v. Ballard, 779 F.2d at 292, (holding the same).

26. Typically, a Section 2255 movant's former counsel is the star witness at any evidentiary hearing held in a Section 2255 proceeding in which ineffective assistance by said counsel has been alleged by the movant.

27. Even if the Section 2255 movant does not introduce evidence relating to privileged communications between himself and his former counsel, the nature of the movant's ineffective assistance claims may itself constitute a waiver of the attorney-client privilege. See Laughner v. United States, 373 F.2d at 327; and Apex Municipal Fund v. N–Group Securities, 841 F.Supp. 1423, 1430 (S.D.Tex.1993), (holding that when a client accuses an attorney of wrongdoing, the client himself waives the privilege by challenging the attorney's actions).

### 2. *Motion for Hearing and Sanctions*

■ Mr. Sharpe also requests this Court hold a hearing and impose sanctions pursuant to Rule 11, Federal Rules of Civil Procedure, upon movant's counsel of record herein, Bill May, Esquire, for including false statements of fact in the brief in support of movant's Section 2255 motion. Rule 11 of the Federal Rules of Civil Procedure provides in pertinent part that:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; or (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

"A signature certifies to the Court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well-grounded in both, and is acting without any improper motive." [28]

However, as with Rule 24 of the Federal Rules of Civil Procedure, there is no analogue to Rule 11 of the Federal Rules of Civil Procedure contained in any of the Federal Rules of Criminal Procedure. For instance, nothing in either Rule 12 or Rule 47 of the Federal Rules of Criminal Procedure contains any provision for sanctioning attorneys who file pleadings or motions in bad faith in the course of a federal criminal proceeding. Likewise, nothing in this Court's Local Court Rules furnishes a basis for imposing sanctions upon a criminal defendant or his client who file pleadings or motions in bad faith. Once again, the only cases cited by Mr. Sharpe in support of his request for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure are civil lawsuits. [29]

Because Mr. Sharpe is not entitled to intervene or to an award of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure simply because now, more than twelve years after the fact, his former client accuses him of rendering ineffective assistance and supports those accusations with second and third–hand hearsay, his request for a hearing on those matters will also be denied.

■ Notwithstanding the foregoing, this Court retains the inherent authority to police its own docket and, if necessary, to sanction attorneys or parties who file pleadings, affidavits, or other documents in this Court in bad faith or without having made a bona fide, good faith, effort to determine the accuracy of factual statements contained therein. [30]

**28.** *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 542, 111 S.Ct. 922, 929, 112 L.Ed.2d 1140 (1991). *See also United States v. Alexander*, 981 F.2d 250, 252 (5th Cir.1993): "Rule 11 demands that the actions of the attorney be objectively, not just subjectively, reasonable under the circumstances."; and *Bogney v. Jones*, 904 F.2d 272, 273–74 (5th Cir.1990), (holding that Rule 11 requires that pleadings filed in federal court be sustained by a reasonable basis in law and fact or in a good faith argument for the extension of existing rules of law).

**29.** *See O'Malley v. New York City Transit Authority*, 896 F.2d 704 (2nd Cir.1990), (*civil* RICO lawsuit); *F.D.I.C. v. Day*, 148 F.R.D. 160 (N.D.Tex.1993), (negligence lawsuit against former bank officers and shareholders who allegedly approved questionable land transactions), *reversed sub nom. F.D.I.C. v. Calhoun*, 34 F.3d 1291 (5th Cir.1994); and *Redd v. Fisher Controls*, 147 F.R.D. 128 (W.D.Tex.1993), (Title VII employment discrimination action).

**30.** *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991), (holding that a federal court has the inherent power to control admission to its bar and to discipline attorneys who appear before it); and *Carroll v. The Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292 (5th Cir.1997).

The license to practice law is not a license to include all manner of defamatory information in court pleadings without making a good faith effort to determine the accuracy of such statements.

Accordingly, it is hereby **ORDERED** that:

1. All relief requested in Mr. Sharpe's motion to intervene for purposes of Rule 11 sanctions, filed May 12, 1997, is **DENIED.**

2. All relief requested in Mr. Sharpe's motion for hearing and for sanctions, also filed May 12, 1997, is **DENIED.**

3. The Clerk shall refrain from filing any further pleading, motion, or other document submitted for filing in this cause unless the person signing said pleading, motion, or other document identifies himself or herself therein as attorney of record for either movant or the Government.

**ORDERED, SIGNED** and **ENTERED** this 13th day of June, 1997.